**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| MARIA XIMENA JOHNSTON, | No. ED CV 16-2388-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on November 18, 2016, seeking review of the Commissioner's[1] denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on December 14, 2016, and December 16, 2016. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on November 9, 2017, that addresses their positions concerning the disputed issues in the case. The Court has taken

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

the Joint Submission under submission without oral argument.

## II.

## **BACKGROUND**

Plaintiff was born on August 10, 1973. [Administrative Record ("AR") at 24, 319.] She has past relevant work experience as a general office clerk and a correction officer. [AR at 23, 118-19.]

On July 15, 2011, plaintiff filed an application for a period of disability and DIB, alleging that she has been unable to work since December 20, 2010. [AR at 13, 319-20.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 192.] Hearings were held on February 1, 2013, and June 28, 2013, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 32-62, 63-92.] A vocational expert ("VE") testified at each hearing. [See id.] On July 11, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability from December 20, 2010, the alleged onset date, through July 11, 2013, the date of the decision. [AR at 159-70.] On December 23, 2014, the Appeals Council remanded the case to the ALJ for further administrative proceedings. [AR at 175-79.] The Appeals Council specifically directed the ALJ, among other things, to give further consideration to the opinions of plaintiff's treating sources, and her maximum RFC. [AR at 177.] The same ALJ held a supplemental hearing on September 3, 2015, at which time plaintiff again appeared represented by an attorney and testified on her own behalf. [AR at 93-132.] A medical expert ("ME") and a different VE also testified at the hearing. [AR at 100-05, 117-31.] On November 3, 2015, the ALJ issued a decision again concluding that plaintiff was not under a disability from December 20, 2010, the alleged onset date, through November 3, 2015, the date of the decision. [AR at 11-25.] When the Appeals Council denied plaintiff's request for review on September 23, 2016 [AR at 1-3], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

/

# III.

# **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). Yet the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

# IV.

# **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A.      THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995), <u>as</u> <u>amended</u> April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. <u>Id.</u> If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. <u>Id.</u> If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. <u>Id.</u> If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. <u>Id.</u> The claimant has the burden of proving that she is unable to perform past relevant work. <u>Drouin</u>, 966 F.2d at 1257. If the claimant meets this burden, a <u>prima</u> <u>facie</u> case of disability is established. <u>Id.</u> The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. <u>Id.</u> The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

**B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

December 20, 2010, the alleged onset date.[2] [AR at 13.] At step two, the ALJ concluded that plaintiff has the severe impairments of lumbar degenerative spondylosis with degenerative disc disease at L4-L5 and L5-S1; attention deficit disorder; mood disorder not otherwise specified; history of alcohol abuse; stress incontinence with overactive bladder; and obesity. [AR at 14.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[4] as follows:

> [Plaintiff] is occasionally able to lift ten pounds and is frequently able to lift less than ten pounds; is able to stand and walk for two hours during an eight-hour day, for a maximum of 30 minutes at at time; is able to sit for six hours during an eight-hour day, for a maximum of 30 minutes at a time; must have the option to sit and stand every 30 minutes; is occasionally able to balance, stoop, kneel, crouch and climb ramps and stairs; is never able to crawl or climb ladders, ropes, and scaffolds; must avoid exposure to excessive vibration, hazardous machinery and unprotected heights; is occasionally able to operate foot controls; needs a cane for prolonged walking of three blocks or more; is able to perform non-complex work with a specific vocational preparation of no more than three; is never able to interact with the public and requires restroom facilities to be in proximity to her workplace.

[AR at 16.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of her past relevant work as a general office clerk and a correction officer. [AR at 23, 119-21.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "tube operator" (Dictionary of

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through March 31, 2017. [AR at 13.]

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

Occupational Titles ("DOT") No. 239.687-014), and a "surveillance system monitor" (DOT No. 379.367-010). [AR at 24, 121-22.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of December 20, 2010, through November 3, 2015, the date of the decision. [AR at 25.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) assessed the relevant medical evidence and determined plaintiff's RFC; and (2) rejected plaintiff's subjective symptom testimony. [JS at 5.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A.  SUBJECTIVE SYMPTOM TESTIMONY**

**1.  Background**

The ALJ discounted plaintiff's subjective symptom testimony "because those allegations are greater than expected in light of the objective evidence of record." [AR at 18.] With respect to plaintiff's physical impairments, the ALJ noted that although the medical evidence "certainly confirms that [plaintiff] experienced a workplace injury to her back in late 2010, diagnostic imaging has shown over time that this condition has improved," and that physical examinations "have consistently shown only tenderness and limited range of motion, with no weakness or decreased sensation consistent with [plaintiff's] allegations of radiating pain." [Id.] He further observed that "[n]o surgery recommendation is evident from the record, and [plaintiff] has received only conservative treatment." [Id.] With regard to plaintiff's migraines and urinary difficulty, the ALJ observed that "the evidence does not support the assertion that [these] result from her back impairment," and "her headaches predated her workplace injury by some time, and one specialist opined that her urgency resulted from a pelvic floor impairment, not her lumbar condition." [Id.] He finally noted that plaintiff "admits she does not always need her cane, and further admits she is able to lift ten pounds. Accordingly the [RFC] determined herein accounts for her limitations." [Id.] With respect to plaintiff's mental impairments, the ALJ found that "[a]s with [plaintiff's]

physical impairments, her credibility concerning her alleged mental impairments is undermined by the objective evidence, which reflects only sporadic treatment by a specialist and dramatic, immediate improvement with medication." [AR at 21.]

Plaintiff contends that the ALJ erred when he discounted plaintiff's testimony, because his sole reason for discounting her testimony was that it was not supported by the objective medical evidence. [JS at 15-16 (citations omitted).] She also argues that because the ALJ failed to specify "which statements by Plaintiff concerning pain, functional limitations, and other symptoms were not 'sufficiently credible,'" the ALJ failed to satisfy his duty to ensure that the credibility finding be "'sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.'" [JS at 16 (citations omitted).]

Defendant responds that the ALJ gave "specific, permissible reasons for finding Plaintiff's testimony less than fully credible." [JS at 18.] Defendant then summarizes the medical evidence relied on by the ALJ in making his determination to discount plaintiff's testimony. [JS at 18-19.] Defendant also notes that the ALJ observed "that no medical provider had recommended that Plaintiff pursue surgical intervention to treat her back condition, and that she was generally treated conservatively," and submits that it was appropriate for the ALJ to consider plaintiff's "conservative treatment regime when evaluating [her] credibility." [JS at 19 (citing AR at 18).] Defendant submits that plaintiff did not challenge the ALJ's reliance on this factor to find plaintiff less than fully credible. [Id.]

**2. Analysis**

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis."[5] Trevizo, 871 F.3d at 678 (citing Garrison, 759

---

[5] On March 28, 2016, after the ALJ's assessment in this case, Social Security Ruling ("SSR") 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;]
(continued...)

F.3d at 1014-15). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks omitted)). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit [her] . . . ability to perform work-related activities . . . ." SSR 16-3p,[6] 2016 WL 1119029, at *4. An ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony about the severity of her symptoms. Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102; Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow

---

[5](...continued)
[i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.; Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." 2016 WL 1119029, at *10. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The Ninth Circuit in Trevizo noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expect to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p). SSR 16-3p shall apply on remand.

[6] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346.

### a. Objective Medical Evidence

Here, in discounting plaintiff's credibility, the ALJ specifically found that the objective medical evidence did not support plaintiff's allegations, plaintiff had generally been treated conservatively, and no back surgery had been recommended. [AR at 18.]

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's subjective symptom testimony (Trevizo, 871 F.3d at 679 (quoting Robbins, 466 F.3d at 883)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Here, however, even assuming, without deciding, that the ALJ's finding that plaintiff's subjective complaints were not supported by the objective medical evidence was specific, clear and convincing and supported by substantial evidence, this reason by itself cannot be the sole legally sufficient reason for discounting plaintiff's subjective symptom testimony. Trevizo, 871 F.3d at 679. Thus, the ALJ's determination to discount plaintiff's testimony rises or falls with the ALJ's other grounds for discrediting plaintiff.

### b. Conservative Treatment

In discounting a claimant's testimony, an ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). "Conservative treatment" has been characterized by the Ninth Circuit as, for example,

9

"treat[ment] with an *over-the-counter pain medication*" (see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (emphasis added); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset")), or a physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain." Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999).

In this case, the ALJ gave "significant weight" to the opinions of the consultative orthopedic surgeon, David Easley, M.D., who reviewed the records and examined plaintiff on May 21, 2014. [AR at 20 (citing AR at 988-1000).] In his written report, Dr. Easley noted that plaintiff's treatment has included pain medications (including the narcotic medication, Norco), as well as Soma, Ibuprofen, Butalbital, Xanax, Lamictal, and Adderall, "several [lumbar] epidurals, none of which have provided her with any lasting relief,"[7] and use of a corset and a cane. [AR at 989-90, 993-94.] Dr. Easley recommended additional epidural injections to the sacro-iliac joints, and physical therapy. [AR at 997.] At issue is whether plaintiff's treatment regimen, including narcotic pain medication and several spinal epidural injections (both received and recommended), constitutes "conservative treatment."

Many courts have previously found that strong narcotic pain medications and spinal epidural injections are not considered to be "conservative" treatment. See, e.g., Yang v. Barnhart, 2006 WL 3694857, at *4 (C.D. Cal. Dec. 12, 2006) (ALJ's finding that claimant received conservative treatment was not supported by substantial evidence when claimant underwent physical therapy and epidural injections, and was treated with several pain medications); Aguilar v. Colvin, 2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014) ("It would be difficult to fault Plaintiff for overly conservative treatment when he has been prescribed strong narcotic pain medications."); Christie v. Astrue, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (refusing

---

[7] Dr. Easley's review of the record showed that plaintiff had received lumbar epidural injections on May 21, 2013, July 17, 2013, and September 3, 2013, and that a February 10, 2014, progress note reflected that the "epidurals help for only a short period." [AR at 992-93.]

to characterize treatment with narcotics, steroid injections, trigger point injections, and epidural injections as conservative); see also Childress v. Colvin, 2014 WL 4629593, at *12 (N.D. Cal. Sept. 16, 2014) ("[i]t is not obvious whether the consistent use of [a prescribed narcotic] is 'conservative' or in conflict with Plaintiff's pain testimony").

Based on the foregoing, the ALJ's assertion that plaintiff's treatment had been "conservative" was not a clear and convincing reason, supported by substantial evidence of record, for discounting plaintiff's testimony.

### c. No Surgical Recommendation

The ALJ also stated that he was discounting plaintiff's subjective symptom statements because there was "[n]o surgery recommendation . . . evident from the record . . . ." [AR at 18.]

However, as discussed above, the record reflects that Dr. Easley recommended further MRIs and medical treatment, and stated that "[s]urgery is *likely* indicated." [AR at 997.] He also stated that after a new MRI and referral for sacro-iliac injections, plaintiff "[i]f better," should "commence formal physical therapy." [Id.] He remarked that "[d]epending on outcome of [the] MRI, surgery for the low back may be indicated," and that plaintiff's "prognosis in absence of further treatment is FAIR/POOR." [Id.] The ALJ did not mention Dr. Easley's opinion regarding plaintiff's potential to be a surgical candidate, and instead relied on Dr. Easley's "Work Capacity Evaluation," which the ALJ stated reflected Dr. Easley's opinion that plaintiff can "perform sedentary work, including lifting and carrying ten pounds," but should avoid most postural activities. [AR at 20 (citing AR at 1000); see also AR at 997.] The ALJ suggested that Dr. Easley's Work Capacity Evaluation was "consistent with the evidence [of record], including Dr. Easley's own examination findings and diagnostic imaging of [plaintiff's] lumbar spine." [Id.] While this may be, the ALJ failed to note that in light of plaintiff's complaints, the prior medical record, and his own examination of plaintiff, Dr. Easley recommended a new MRI of the lumbar spine, spinal injections in the sacro-iliac joints, and raised the possibility of future surgery.

Even if Dr. Easley's opinion is not an actual "recommendation" for surgery, this reason for discounting plaintiff's subjective symptom testimony -- which suggests that had surgery been

11

recommended, the ALJ might find plaintiff's subjective symptom allegations to be more credible -- begs the question as to whether surgery would be a viable treatment for plaintiff's back impairment within the relevant time frame. Moreover, although he noted that there was no "recommendation" for surgery in the record, the ALJ failed to point to anything in the record to show that any specific surgical or more invasive procedures in addition to the treatment plaintiff was receiving, or had been recommended to receive, is warranted for plaintiff's physical condition or is a standard method for treating individuals with plaintiff's physical condition. See Trevizo, 871 F.3d at 677 ("the failure of a treating physician to recommend a more aggressive course of treatment, absent more, is not a legitimate reason to discount the physician's subsequent medical opinion about the extent of disability"); Perez v. Colvin, 2016 WL 1274114, at *5 (C.D. Cal. Mar. 31, 2016) (ALJ "cannot fault Plaintiff for failing to pursue nonconservative treatment options if none existed") (citation omitted).

Thus, this was not a specific, clear and convincing reason supported by substantial evidence of record for discounting plaintiff's subjective symptom testimony.

### 3. Conclusion

Based on the foregoing, even if it were supported by the record -- which the Court does not find -- because the alleged lack of objective medical evidence by itself cannot be the only reason for discounting plaintiff's testimony, remand is warranted to provide specific, clear and convincing reasons for discounting plaintiff's subjective symptom testimony, in accordance with SSR 16-3p, if supported by the evidence. Treichler, 775 F.3d at 1103; Brown-Hunter, 806 F.3d at 493-94.

### B. MEDICAL OPINIONS

Plaintiff contends that the ALJ failed to properly consider the opinions of plaintiff's treating sources, including those from orthopedic surgeon Rajiv Puri, M.D., psychiatrist Geetha Puri, M.D., and physician's assistant Frantz Despas ("P.A. Despas"). [JS at 5-9.]

Specifically, in an August 7, 2013, residual functional capacity questionnaire, Dr. R. Puri concluded that plaintiff could sit, stand, and/or walk less than two hours in an eight-hour workday,

would need to elevate her lower extremities a substantial portion of the workday, could lift less than ten pounds, and would likely miss more than four days of work per month due to her impairments. [AR at 944-45.] The ALJ "considered but [did] not give significant weight to," Dr. Puri's opinions as documented in a number of Dr. Puri's reports as well as in his RFC questionnaire, for the following stated reasons: Dr. Puri "completed a series of reports in connection with [plaintiff's] workers' compensation claim," but there were no treatment records submitted in support of the reports; although the reports contain a few notations of "objective findings," there is no indication of when such findings were made and, therefore, the reports lack "sufficient objective basis to be given significant weight"; Dr. Puri's report of decreased sensation and reflexes as a result of plaintiff's lumbar impairment is not documented in treatment notes and is inconsistent with other treatment records and diagnostic evidence detailed in the ALJ's decision; Dr. Puri "noted that plaintiff's reported leg symptoms were 'out of proportion'"[8]; and Dr. Puri's statements that plaintiff was temporarily totally disabled are too vague to "assist in the determination of a precise [RFC] and are rejected," and his statement that plaintiff is "simply unable to work," is rejected as an issue reserved to the Commissioner. [AR at 19-20 (citations omitted).]

With respect to Dr. G. Puri, plaintiff's treating psychiatrist, on July 9, 2014, Dr. Puri completed a mental residual functional capacity statement. [AR at 948-51.] In her assessment, Dr. Puri opined that plaintiff would be off task more than 30% of the time, and would likely miss at least six days of work per month or more. [AR at 950.] The ALJ "considered, but [did] not give significant weight to," Dr. G. Puri's opinions. [AR at 21-22.] He stated that her opinions were not supported by the objective treatment records, as Dr. Puri's mental status examinations were largely unremarkable and confirmed improvement with medication; and plaintiff "was experiencing

---

[8] The ALJ seems to imply that Dr. Puri's statement reflects his disbelief of plaintiff's complaints. However, the report as a whole reflects that Dr. Puri reported that plaintiff was experiencing numbness in both legs, which he appeared to note was "[o]ut of proportion" to the objective lumbar MRI findings reflecting mild bulging discs at L5-S1. [AR at 1046.] Dr. Puri did not in any way state -- implicitly or explicitly -- that plaintiff's numbness was not credible; indeed, as a result of her complaints, he recommended an EMG study for both legs. [Id.]

an 'acute episode' of mood disorder [during that July 2014 visit], suggesting that [Dr. Puri's] opinion details temporary limitations and not a true [RFC] evaluation based on an impairment lasting 12 months or more." [AR at 22.] Additionally, Dr. Puri had seen plaintiff only twice at the time of her evaluation and, therefore, she did not have "sufficient knowledge of [plaintiff's] longitudinal history to make a meaningful determination." [Id. (citation omitted).] For the same reasons, the ALJ discounted Dr. Puri's follow-up evaluation in 2015. [Id. (citations omitted).]

With respect to the opinions of plaintiff's treating physician's assistant, in a Work Restriction Form dated July 19, 2012, P.A. Despas opined that plaintiff was not able to lift more than 10-15 pounds, and was restricted as follows: "NO PULLING NO RUNNING NO PROLONGED WALKING, SITTING, OR STANDING NO BENDING NO WORKING MORE THAN 4 HOURS PER DAY." [AR at 837.] The ALJ gave P.A. Despas' opinion "less weight than other qualifying medical source opinions," because P.A. Despas is not an acceptable medical source.[9] [AR at 20.] He

---

[9] At the time plaintiff filed her application for benefits, a certified physician's assistant such as P.A. Despas was not generally considered to be an acceptable medical source. The Court notes that the Administration has issued new regulations, and for claims filed after March 17, 2017, "acceptable medical source" now *includes* a "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, [or a Licensed Physician Assistant] for impairments within his . . . licensed scope of practice." 20 C.F.R. § 404.1502(a)(7), (8). Nevertheless, even under the Administration's prior regulations, evidence from "other medical" sources, that is, lay evidence, can demonstrate the "severity of the individual's impairment(s) and how it affects the individual's ability to function." Id. The Social Security Administration has recognized that with "the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." SSR 06-03p, 2006 WL 2329939, at *3. Therefore, according to the Administration, opinions from other medical sources, "who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects." Id. Relevant factors when determining the weight to be given to an "other" medical source include: how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairments; and any other factors that tend to support or refute the opinion. SSR 06-03p, 2006 WL 2329939, at *4. Thus, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' *may outweigh* the opinion of an 'acceptable medical source . . . .'" SSR 06-03p, 2006 WL 2329939, at *5 (emphasis
(continued...)

nevertheless found that P.A. Despas' conclusion that plaintiff is able to lift and carry ten pounds was consistent with the medical evidence and, thus, gave his opinion "some limited weight." [JS at 14.]

Because the matter is being remanded for reconsideration of plaintiff's subjective symptom testimony in accordance with SSR 16-3p, and the ALJ on remand must as a result reconsider plaintiff's RFC in light of her testimony, the ALJ must also reconsider on remand the medical evidence of record.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any

---

[9](...continued)
added).

testimony. Second, the ALJ on remand shall reassess the medical opinions of record, including, but not limited to, the opinions of Dr. R. Puri, Dr. G. Puri, and P.A. Despas. Finally, based on his reevaluation of the entire medical record and assessment of plaintiff's subjective symptom testimony, the ALJ on remand shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[10] See Shaibi v. Berryhill, 870 F.3d 874, 881-83 (9th Cir. 2017).

## VII.
## **CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: December 7, 2017

*Paul L. Abrams*
_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[10] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work.